WOFFORD & RATHBONE v. BUCHEL POWER AND IRRIGATION
COMPANY.

Decided April 19, 1904.

**1.—Electricity—Contract—Warranted Capacity—Charge—Weight of Evidence—Assuming Facts.**

In a suit upon a contract to furnish current enough to run a 75-horse power motor for purposes of irrigation the court properly refused a requested charge that "the warranted capacity of the electrical motor described in the contract upon which plaintiff sues is 75-horse power, but any additional horse power which said motor could safely develop and which was required to perform its work * * * is also within the warranted capacity of said motor within the meaning of said contract," such charge being objectionable: (1) Because the warranty as to the horse power of the motor, not being evidenced in writing and being a matter in dispute, the charge was on the weight of evidence. (2) It assumed that defendant contracted to furnish such quantity of current as the motor would safely stand, however much horse power it might develop, if plaintiff's pump required more to perform the work put upon it.

**2.—Liability—Measure of Damages—Immaterial Error.**

The court's general charge on the measure of damages and the refusal of special charges upon that issue, if error at all, were immaterial where the verdict is manifestly based on the issue of liability and the jury did not reach the issue of damages.

**3.—Evidence—Letters and Telegrams.**

Letters and telegrams from an electric company, from whom a motor was bought, addressed to defendant, were admissible upon the issue of warranted capacity of the motor where the evidence shows that defendant acted as the agent of plaintiff in the purchase of the motor.

**4.—Practice in Trial Court—New Trial.**

The trial court properly sustained an exception to a motion for new trial filed twenty days after rendition of judgment, not showing why it was not filed sooner and not sworn to.

Appeal from the District Court of De Witt. Tried below before Hon. James C. Wilson.

*Kleberg, Grimes & Schleicher* and *Davidson & Bailey,* for appellants.

*George J. Schleicher* and *Denman, Franklin & McGown,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is a suit by appellants to recover of the appellee, a corporation, damages alleged to have resulted from a failure on the part of appellee to furnish to appellants sufficient electrical current to operate to its warranted capacity a 75-horse power electric motor used by them for pumping water for irrigation purposes, and which current the appellees had contracted to furnish. A trial by jury resulted in a verdict for appellee.

The appellants were the owners of 340 acres of land near the Guadalupe River in De Witt County, upon which they wished to grow rice by irrigation from the river. The appellee was a corporation engaged in the generation and sale of electric current for lighting and power. The appellants having determined to operate their pump by electric power, concluded to purchase an electric motor from the General Electric Company. Having had no previous dealings with that concern, they induced the appellee through its officers to make the purchase

for them, which they did without charge for their services. Appellants thereupon entered into a contract with appellee whereby the latter was to furnish the current to operate the motor. The material part of this contract is as follows:

"The party of the second part (the appellee) hereby agrees and contracts to supply to the said transmission line of the said party of the first part electric current at a voltage pressure at approximately 2300 volts and in sufficient quantity to drive to its warranted capacity a certain 75-horse power electric induction motor which the said party of the second part has ordered for the said party of the first part from the General Electric Company of Chicago, Ill." (The latter company was made a party defendant on the prayer of appellee, but when the evidence was closed was dismissed from the case.)

The motor was installed, the land planted in rice and the irrigation begun. Fifty acres were properly irrigated and made a full crop. Forty-five acres for want of sufficient water made only a partial crop. The remaining 240 acres produced nothing for want of water.

On the general question of liability two controlling issues were presented by the pleading and proof, viz., what was the warranted capacity of the motor and whether appellee had furnished sufficient current under the contract. Upon these points the evidence was conflicting, but was ample to sustain the conclusion that sufficient had been furnished to operate the motor to its warranted capacity when properly handled.

By the first and third assignments appellants complain of the refusal of the trial court to give their first requested charge, which is in the following language: "Plaintiffs request the court to instruct the jury that the warranted capacity of the electrical motor described in the contract upon which plaintiff sues is 75-horse power, but any additional horse power which said motor could safely develop and which was required to perform its work in operating the pump which it was intended to operate is also within the warranted capacity of said motor within the meaning of said contract."

The court did not err in the respect complained of. To the charge requested there are at least two fatal objections. In the first place the warranty as to the horse power of the motor, not being evidenced by writing and being a matter in dispute, the charge was manifestly on the weight of evidence. And second, it assumes that appellee contracted to furnish such quantity of current as the motor would safely stand, however much horse power it might develop, if plaintiff's pump required more to perform the work put upon it.

There was testimony to the effect that with the current furnished the motor was sometimes required to develop double the horse power mentioned in the contract, though under normal conditions 65 horse power was ample to lift 4200 gallons of water per minute, the amount the pump was expected to lift. It is manifest from the terms of the contract that the appellee's obligation was measured by the warranted capacity of the motor and not the amount which by actual experiment

it might be found able to endure. The trial court in his general charge properly left to the jury the issue of warranted capacity to be found as a fact, as well as the issue of due performance of its contract on the part of appellee.

This disposes also of the second assignment, which assails the court's general charge upon the point.

The fourth and fifth assignments are addressed to the court's general charge on the measure of damages and the refusal to give special charges upon that issue. We are of opinion the matters complained of, if error, are immaterial, as the verdict is manifestly based on the issue of liability and the jury did not reach the issue of damages.

The sixth assignment complains of the introduction of certain letters and telegrams received by the appellee from the General Electric Company during the negotiations for the purchase of the motor for appellants. They were adduced over appellant's objection upon the issue of warranted capacity. We are of opinion they were admissible. There is some evidence tending to show they were shown to Rathbone, one of the appellants, and further it appears that appellee acted as the agent of appellants in the purchase of the motor. Communications addressed to them containing warranties as to the power of the motor would inure to the benefit of appellants and were admissible on the issue.

The seventh, eighth, ninth and tenth assignments complain of the action of the court in sustaining exceptions to the supplemental motion for new trial. Within two days of the rendition of the judgment a motion for new trial was duly filed. Twenty days later, and shortly prior to the adjournment of the court, they filed a supplemental motion which set up the following additional facts: (1) The jury which tried the cause did, before they were impaneled, visit appellee's power plant and were probably influenced in their verdict by what they saw. The motion shows that the fact was known to appellant's before the jury were selected to try the cause. (2) Because the jury discussed the case among themselves before the cause was submitted to them by the charge of the court. (3) That Tom Smith, one of the jurors, was approached by some unknown person and told not to decide the case according to his own judgment but to go with the white men on the jury.

The motion did not disclose when these facts came to the knowledge of appellants or why they were not sooner presented. It was not sworn to, nor were there any supporting affidavits.

The motion was excepted to on the ground that it was not made within two days of the date of the judgment, nor reasons given for not sooner presenting the facts, and further because it was not sworn to. These exceptions were sustained and appellants refused to amend.

The first ground was manifestly too vague to require consideration. As to the second and third grounds they presented matter requiring an investigation of the facts. The motion was not sworn to. It did not disclose the names of the witnesses by which its allegations were to be

established nor in any other way point out the means by which the court might inform himself of the facts alleged.

A motion for a new trial filed later than two days after the judgment is addressed to the trial court's discretion and we are unwilling to hold that the trial court abused that discretion by refusing to institute a general investigation of the unsworn allegations of the supplemental motion, especially when appellants refused to swear to it or append affidavits or otherwise amend after the exceptions were sustained.

We find no reversible error in the record. The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.